FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 21, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER TYLER, an individual,<br><br>                          Plaintiff,<br><br>    -vs-<br><br>CHELAN COUNTY, by and through its agency; and CHELAN COUNTY SHERIFF'S OFFICE, a Washington Municipal Corporation,<br><br>                          Defendant. | No.   2:19-CV-00172-MKD<br><br>**REPORT AND RECOMMENDATION** |

      **BEFORE THE COURT** is Defendant's Motion to Enforce Settlement Agreement. ECF No. 38. The Court held a hearing on the motion on November 17, 2023. Attorney Mary Schultz appeared on behalf of the Plaintiff; Attorney Jeffrey James represented the Defendants. Defendants Chelan County and Chelan County Sheriff's Office ("Defendants") ask the Court to recognize and enforce a settlement agreement between Plaintiff Jennifer Tyler ("Plaintiff"), Defendant Chelan County, and the Chelan County Deputy Sheriffs Association[1] ("Association") arising out of employment grievances addressed by the Association on behalf of Plaintiff and resolved by a written settlement agreement concluded in March 2021 (the "Settlement Agreement"). Defendants contend that

---

[1] As set forth herein, the Association represented Plaintiff's interests as required by a collective bargaining agreement. The Association is not a party in this case.

ORDER - 1

the settlement agreement precludes Defendant from seeking lost wages in this case. Defendants further request that the Court assess attorney fees for the cost of bringing the motion.

## I.    BACKGROUND

In her Complaint filed May 17, 2019, Plaintiff seeks damages arising from alleged employment discrimination, harassment, and retaliation. ECF No. 1. When the Complaint was filed, Plaintiff was represented by Michael J. Kelly and Joseph O. Baker of Gehrke, Baker, Doull & Kelly. *Id*. After the Complaint was filed, Defendant Chelan County Sheriff's Office, Plaintiff's then employer, terminated Plaintiff's employment as a deputy sheriff in 2019, approximately seven months after the instant lawsuit was filed. ECF Nos. 40-1, 42.

Following Plaintiff's termination, the parties sought to stay this case to allow Plaintiff to complete a grievance procedure regarding Plaintiff's termination, as provided for in the collective bargaining agreement ("CBA") between the Association and Chelan County. ECF No. 9. Pursuant to the CBA, the Association advocated for Plaintiff's interests during the grievance procedure. The stay was for the purpose of allowing Plaintiff to include a wrongful termination claim in the instant lawsuit following the Association's resolution of the termination grievance. ECF No. 9. The District Court entered a stay on February 7, 2020. ECF No. 10.

A little more than a year later, the parties reported the stay could be lifted because the grievance process had concluded in the form of the Settlement Agreement between Plaintiff, the Association, and Defendant Chelan County. ECF No. 14. The District Court lifted the stay on April 6, 2021, and then granted the parties' stipulated motion to continue the trial until May 2023. ECF No. 23. Plaintiff did not amend her Complaint to include a wrongful termination claim. *See* docket generally.

ORDER - 2

On March 21, 2023, Plaintiff's original attorneys, Mr. Kelly and Mr. Baker, withdrew because Plaintiff retained her current attorney, Ms. Schultz. ECF Nos. 24, 25. Ms. Schultz entered a notice of appearance on March 23, 2023. ECF No. 25. Due to the imminent trial date, Ms. Schultz sought another continuance and the District Court continued the trial to May 20, 2024. ECF No. 33. Plaintiff then brought the instant motion on September 6, 2023. ECF No. 38.

## II.   FACTS

Defendant Chelan County Sheriff's Office employed Plaintiff as a deputy sheriff beginning in 2006. ECF No. 1 at 4. Prior to the events underlying the current lawsuit, the Sheriff's Office terminated Plaintiff on November 1, 2010. *Id.* An arbitrator reinstated Plaintiff in 2013. *Id.* Plaintiff brought an employment discrimination claim related to her treatment prior to the 2010 termination and for issues surrounding her termination in Chelan County Superior Court against Chelan County. *Id.* Plaintiff prevailed in the lawsuit in 2018 with a jury award of $500,000.00 in emotional distress damages and $6,500.00 in economic damages. *Id*. The lawsuit caused friction between Plaintiff and her fellow deputies.

Tensions remained high between Plaintiff and her fellow deputies following her favorable Chelan County Superior Court verdict in 2018. ECF No. 42. Plaintiff alleges in the current lawsuit that following the favorable resolution concerning her first termination and reinstatement, several deputies actively undermined her employment in retaliation for her prior lawsuit and union activities. ECF No. 1. The Complaint includes several alleged examples. *See* ECF No. 1. In the months prior to filing the lawsuit, a fellow deputy lodged a formal complaint against her. *Id.*

On May 17, 2019, Plaintiff filed the instant suit against Defendants Chelan County and Chelan County Sheriff's Office alleging a hostile work environment, sex discrimination, retaliation for protected activities, and hostile work

ORDER - 3

environment under both Federal and state law as well as negligence. *Id*. Plaintiff continued to experience difficulties with her fellow deputies after bringing the instant lawsuit and the complaint filed against her by a fellow deputy remained pending. *Id.* and also see ECF No. 42.

On June 13, 2019, after the instant lawsuit was filed, Defendant Chelan County Sheriff's Office imposed a three-day suspension on Plaintiff as a result of the fellow deputy's complaint. *Id*. The Association then stepped in and grieved the suspension as retaliatory. *See* ECF No. 42-1. The Association sought relief on Plaintiff's behalf to make whole the three-day loss of work, including pay and interest on lost wages. *Id.*

In an opinion issued on February 11, 2021, a Public Employment Relations Examiner ruled in favor of Plaintiff awarding: "any wages and benefits in the amounts Tyler would have earned or received during the suspension." ECF No. 42-2 at 17. The Chelan County Board of Commissioners affirmed the Examiner's decision. ECF No. 42-3.

During the grievance process addressing the suspension, and approximately seven months after filing the instant lawsuit, Defendant Chelan County Sheriff's Office terminated Plaintiff a second time. *See* ECF No. 40. The Association again acted on Plaintiff's behalf and notified the elected Sheriff by letter dated September 4, 2019, of its intent to grieve the decision to terminate Plaintiff and alleged that Plaintiff's termination violated the CBA and lacked just cause. ECF No. 44-4.[2] On February 4, 2020, the parties filed a Stipulated Motion and Order to Stay regarding this case, stating:

---

[2] The CBA clearly applies to employees that the Association believes were terminated in violation of the CBA. ECF No. 47-1, Exhibit A, Agreement Between the Chelan County Deputy Sheriff's Association and Chelan County

ORDER - 4

> Plaintiff intends to include wrongful termination in this litigation. However, at present, Plaintiff and her counsel believe it necessary to stay this matter until the grievance procedure is complete. In particular, Plaintiff wishes to devote her time and energy to assisting her Guild counsel in the grievance proceedings, rather than prosecute two separate actions concurrently. Further, this litigation may be affected by any potential arbitration proceedings in its facts and/or damages.

ECF No. 9 at 2. The District Court then stayed the case on February 7, 2020. ECF No. 10.

On August 10, 2020, Plaintiff filed a Status Report and indicated the following to the District Court:

> Chelan County and the Chelan County Sheriff's Officers' Guild have not yet completed arbitration in this matter. With regard to the arbitration, both parties are represented by other counsel, not involved in this case, and the exact status of the arbitration in that matter is not currently known. In the interim, Counsel for the parties on this case have discussed the possibility of a mediation in attempt to come to a "global" resolution of both the Guild arbitration matter and the instant case.

ECF No. 11 at 2. A subsequent Status Report filed on October 1, 2020, contained nearly identical language, updating the status only to include that the parties were choosing an arbitrator and dates for the arbitration. ECF No. 13 at 2.

Finally, on April 5, 2021, the parties reported that the "Chelan County and the Chelan County Sheriff's Officers' Guild have come to a final resolution in the Guild/County arbitration related to the Collective Bargaining Agreement issues tied to this matter." ECF No. 14 at 1-2. To date, Plaintiff has not filed an amended Complaint to include any claims pertaining to Plaintiff's most recent termination.

---

Regarding Commissioned Deputies, ¶ 2.1.

ORDER - 5

On October 23, 2023, Plaintiff filed a motion for extension of time to amend Plaintiff's complaint, ECF No. 52, which the District Court granted.

      As reflected in the parties' status reports, the Association grieved Plaintiff's termination claim and ultimately arrived at an agreed settlement, as memorialized in the Settlement Agreement, that included five years of wages and benefits for Plaintiff to be paid through payroll on a schedule as if she were employed amounting to $455,000.00. ECF No. ECF No. 42-9. Plaintiff received back pay from the time of her termination until the time of the agreement. ECF No. 40-1. Defendants agreed to pay uninsured medical and dental expenses incurred from the date of termination until the date of execution of the Settlement Agreement. *Id.* The Settlement Agreement includes a "Mutual Release" paragraph, wherein Plaintiff "fully and forever releases and discharges the County. . .from all liability for any and all wage claims relating to her employment with Chelan County." ECF No. 40-1 at 4, ¶ 11. The signature pages on the agreement are unusual as each signature is on a separate sheet and Plaintiff and Michael Morrison (the Association President) signed pages watermarked, "DRAFT." *Id.* at 7. Nonetheless, in a follow-up email, Association attorney Cynthia McNabb asked opposing counsel to "please accept this email as assurance that they meant to sign the final." *Id*. at 8. Moreover, since execution of the agreement on March 8, 2021, Plaintiff has plainly acted as though Settlement Agreement is final and has readily accepted salary and other benefits paid by Defendants pursuant to the Settlement Agreement. ECF No. 40 at 4.

### III.   ANALYSIS

The Court has considered the motion, briefing, and the arguments of the parties. The Court is fully informed. For the reasons set forth below, the Court recommends that the District Court grant Defendant's Motion to Enforce Settlement Agreement. ECF No. 38. The Settlement Agreement resolved

economic damages arising from Plaintiff's 2019 termination from the Chelan County Sheriff's Office. All of the terms, both those favorable to Plaintiff including the payment of five years of wages and other economic damages, as well as the waiver of future wage claims, to which Plaintiff now objects, are enforceable as to Plaintiff.

A.      **The Settlement Agreement is Presumptively Enforceable.**

Employees subject to a collective bargaining agreement are bound by a settlement agreement negotiated between a union and an employer through an established grievance procedure consistent with the collective bargaining agreement. *Ervin v. Columbia Distrib., Inc.,* 84 Wash. App. 882, 887 (1997).[3] "Unions are free to negotiate and accept settlements even without the grievants' approval." *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989). "Washington courts interpret settlement agreements in the same way they interpret other contracts." *McGuire v. Bates*, 169 Wn.2d 185, 188 (2010). "The touchstone of contract interpretation is the parties' intent." *Tanner Elec. Coop v. Puget Sound Power & Light*, 128 Wn.2d 656, 674 (1996). However, the "subjective intent of

---

[3] "In general, where a collective bargaining agreement establishes grievance and arbitration procedures for the redress of employee grievances, an employee must exhaust those procedures before resorting to judicial remedies." *Lew v. Seattle Sch. Dist. No. 1*, 47 Wash. App. 575, 577 (1987). The Court recognizes, however, that "[d]iscrimination claims in Washington are based on statute (chapter 49.60 RCW). It permits individual employees to vindicate their civil rights in court without first exhausting remedies provided by a collective bargaining agreement." *Yakima Cnty. v. Yakima Cnty. L. Enf't Officers Guild*, 157 Wash. App. 304, 328 (2010).

ORDER - 7

the parties is generally irrelevant if the intent can be determined from the actual words used." *Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 776 (2009).

Here, the Association and Defendant Chelan County agreed to a Settlement Agreement pursuant to the grievance procedures described in the CBA that binds Plaintiff. ECF No. 40-1. First, while employed at the Chelan County Sheriff's Office, the CBA bound Plaintiff. ECF No. 47-1, ¶ 1-1. Second, the CBA gave the Association the exclusive right to grieve violations, including discharge without good cause allegations. ECF No. 47-1. Third, the Association exercised the right to grieve claims on behalf of Plaintiff, both when Plaintiff was placed on a three-day suspension, then later when she was terminated. ECF No. 42, 47-2, 47-3, 47-4, 47-5, and 47-6.

The Settlement Agreement ultimately negotiated by the Association resolved Plaintiff's wrongful termination grievance favorably for Plaintiff by awarding her five years of wages totaling $455,000 and benefits. ECF No. 40-1 at 3. Plaintiff also received back pay from the time of termination, as well as reimbursement of uninsured medical and dental expenses. *Id*. In exchange for this favorable result, the Settlement Agreement specifically released Chelan County Sheriff's Office from "any and all wage claims relating to [Plaintiff's] employment with Chelan County." *Id*. at 4, ¶ 11. Accordingly, the Court concludes Plaintiff is presumptively bound by the terms of the Settlement Agreement negotiated between the Association and Defendant Chelan County.

**B.** **The Terms of the Settlement Agreement Bind Plaintiff Absent a Showing that the Association Breached its Duty of Fair Representation.**

In order escape the enforceability of the Settlement Agreement, Plaintiff must demonstrate the Association somehow breached its duty of fair representation to Plaintiff. "Courts have imposed a duty of fair representation on unions because of their status as the exclusive bargaining agent for their members." *Womble v.*

ORDER - 8

*Loc. Union 73 of Int'l Bhd. of Elec. Workers, AFL-CIO,* 64 Wash. App. 698, 701 (1992) (*citing Vaca,* 386 U.S. at 177). For a union to breach its duty of fair representation, its conduct in handling the grievance must be "arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190. "[M]ere negligent conduct by a union does not constitute a breach of the union's duty of fair representation." *Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. California*, 827 F.2d 589, 593 (9th Cir. 1987). To demonstrate that a union has breached the duty of fair representation, "the employee must prove: (1) the employer's action violated the terms of the collective bargaining agreement and (2) the union breached its duty of fair representation." *Womble*, 64 Wash. App. at 703.

Accordingly, absent proof that the Association breached its duty of fair representation, Plaintiff must abide by the terms of the Settlement Agreement because: (1) the CBA applied to Plaintiff; (2) the Association had exclusive right to address discharge without good cause under the CBA; and (3) the Association grieved Plaintiff's alleged wrongful discharge which resulted in the Settlement Agreement.

C. **Plaintiff's Contentions Against the Enforceability of the Settlement Agreement Fail.**

    1. *Plaintiff Does Not Dispute that the Association and Plaintiff Executed a Settlement Agreement with Defendant Chelan County and Plaintiff has Received Ongoing Benefits as a Result.*

Plaintiff does not, and cannot reasonably, dispute that the Association and Defendant Chelan County Sheriff's Office reached a Settlement Agreement. Plaintiff also does not dispute that Plaintiff has received substantial ongoing benefits as a direct result of the Settlement Agreement. Rather, Plaintiff now contends that she should not be bound by the waiver of wage claims in the Settlement Agreement while Plaintiff continues to benefit from the result of the

ORDER - 9

Settlement Agreement in the form of continued salary payments and other benefits derived as a result of the Settlement Agreement. Plaintiff's position is untenable.

In support of her position, Plaintiff appears to argue: (1) the Association did not grieve the wrongful termination issue; (2) the Association lacked the right or authority to negotiate a settlement of the wrongful termination issue; (3) Plaintiff's rights cannot be waived without her knowing consent and she did not knowingly consent to the waiver of future claims; (4) Plaintiff is not a party to the Settlement Agreement and therefore need not comply with the terms; (5) or, in the alternative, if she is a party, she was intentionally led to believe by the Association and Defendant Chelan County Sheriff's Office that the Settlement Agreement did not limit future wage claims as of yet unpled wrongful discrimination claims, meaning thereby that the Association and Defendant Chelan County Sheriff's Office willfully misrepresented the effect of the Settlement Agreement on the instant lawsuit; (6) the Association and Defendant Chelan County Sheriff's Office colluded to mislead her and purposefully excluded her counsel in the instant case; and (7) Defendant Chelan County Sheriff's Office improperly used the Association to terminate Plaintiff's federal claims and damages. ECF No. 41. Plaintiff's contentions are addressed in turn:

    **2.   *The Association Grieved Plaintiff's Wrongful Termination Claim Consistent with the Association's Authority.***

The facts of this case do not support Plaintiff's contentions regarding whether the Association grieved her wrongful termination claim and the Association's authority to do so. First, Plaintiff's assertion that the Association failed to grieve Plaintiff's termination is flatly inaccurate. As illustrated by the letter submitted to the Chelan County Sheriff's Office, (ECF No. 44-4) and reflected in representations to the District Court in the instant case, (*see* ECF Nos. 9, 11, and 14), the Association grieved Plaintiff's termination and negotiated a

favorable result. The Court finds no evidence that the Association breached a duty of fair representation by somehow not grieving Plaintiff's termination.

Second, there are no facts that suggest the Association lacked authority to grieve Defendant's termination claim. "CBAs generally are not to be read as standard contracts. And the court in *Inlandboatmens Union of Pac. v. Dutra Group* explains why: 'The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. The collective agreement covers the whole employment relationship.'" *Chelan Cnty. v. Chelan Cnty. Deputy Sheriff's Ass'n*, 162 Wash. App. 176, 182–83 (2011).[4] Accordingly, the plain language of the CBA, coupled with the clear purpose of the grievance procedure set forth in the CBA, are contrary to Plaintiff's contention that the Association lacked authority to grieve her wrongful termination claim. ECF No. 47-1. The CBA protects the rights of employees, including those terminated without good cause. *Id*. The Association retains the right to grieve wrongful termination claims. *Id*.[5] The Association then grieved Plaintiff's wrongful termination claim. ECF No. 47-2.

---

[4] In *Chelan Cnty.,* the Court concluded that the legal enforceability of a memorandum of understanding arising from a mediation addressing a grievance should be referred to arbitration because the memorandum of understanding arose from a grievance procedure outlined in the collective bargaining agreement. *Chelan Cnty.*, 162 Wash. App. at 183. If the Plaintiff seeks clarification of the terms of the Settlement Agreement and applicability to Plaintiff, pursuant to this decision, arbitration may be the appropriate (and only) vehicle for addressing such a dispute.

[5] Though the Association's role in wrongful termination is not explicitly set out,

ORDER - 11

Ultimately, the Settlement Agreement was the end result of the grievance process initiated by the Association on Plaintiff's behalf. ECF No. 47-2. Indeed, the Association negotiated very favorable terms for Plaintiff including back pay from the time of termination, reimbursement of uninsured dental and medical expenses incurred following the wrongful termination until the time of the Settlement Agreement, and five years of wages to be paid without an obligation for Plaintiff to perform any work. ECF No. 40-1 at 2-3. Plaintiff, through the Association's counsel, advocated for terms and asked questions she had about the agreement prior to signing it. *See* ECF Nos. 42-7, 42-8, 42-10, 47-10, and 47-11.

There is similarly no merit to Plaintiff's contention that she is not a party to the Settlement Agreement or did not knowingly consent to the Settlement Agreement. As set forth above, Plaintiff is functionally a party by virtue of the Association's obligation to represent her interests pursuant to the CBA. Plaintiff's active involvement in the process that culminated in the Settlement Agreement and her signature on upon review of the Settlement Agreement amply illustrate her knowing consent to all terms of the agreement, including waiver of future wage claims. Ultimately, whether or not Plaintiff is a formal party to the Settlement Agreement, the terms of the Settlement Agreement, including the waiver, apply to Plaintiff because the Association grieved her alleged wrongful termination on her

---

the CBA recognizes the Association as the "sole bargaining agent for wages, hours and working conditions for all full time and regular part-time fully commissioned deputies." ECF No. 47-1, at ¶ 1.1. Management retains the right to "discharge employees for just cause." *Id.* at ¶ 2.1. "A grievance is defined as a dispute involving the interpretation, application or alleged violation of any provision of this Agreement." *Id.* at ¶ 9.1. Discharge without good cause violates a provision of the CBA, so meets the definition of a grievance.

ORDER - 12

behalf arriving at a mutually agreeable settlement which was executed by the Association, Plaintiff, and the County.[6]  Accordingly, on the facts of this case, Plaintiff is bound to the terms of the Settlement Agreement.  *See* ECF No. 47-1.

### 3. *Plaintiff Offers No Evidence of Collusion or Bad Faith by the Association in the Resolution of Plaintiff's Wrongful Termination Claim Pursuant to the CBA.*

Again, Plaintiff must demonstrate the Association breached its duty of fair representation to be relieved from the terms of the Settlement Agreement.  *Shane*, 868 F.2d at 1060.  Plaintiff, however, fails to provide evidence of any breach by the Association of its duty to fairly represent Plaintiff by misrepresentations on the part of the Association or by collusion with the Defendants by the Association.  Plaintiff similarly offers no evidence of the Association's bad faith.  Rather, Plaintiff offers only her own self-serving assertions and in support of her contention the Association somehow acted in bad faith.[7]

---

[6] The Court recognizes that Plaintiff may pursue state statutory state claims independent from grieving violations of the CBA.  *Reese v. Sears, Roebuck & Co.*, 107 Wash.2d 563, 578 (1978). ("We therefore conclude that employees may choose to vindicate their civil rights by immediately filing a civil action under RCW 49.60 or they may wait, pursue a remedy under their collective bargaining agreement, and *if their civil rights remain unenforced*, filed a civil discrimination action pursuant to RCW 49.60." (emphasis added))

[7] Plaintiff suggested that an evidentiary hearing would be appropriate to introduce extrinsic evidence surrounding the terms of the contract in an effort to understand the waiver portion of the agreement.  The Court declines Plaintiff's suggestion.  As mentioned in Footnote 4, arbitration may be the only vehicle for a dispute about the terms of the Settlement Agreement. Further, "[a]dmissible extrinsic evidence

ORDER - 13

Court records plainly demonstrate that Plaintiff's original counsel in this case contemplated filing wrongful termination claims, but Plaintiff's counsel also stated he intended to see the Association's grievance procedure to its conclusion prior to incorporating any wrongful termination claim, because "this litigation may be affected by any potential arbitration proceedings in its facts and/or damages." ECF No. 9.  Moreover, the status reports to the District Court illustrate that Plaintiff's counsel in this suit was well aware of the grievance procedures and intentionally chose not to pursue wrongful termination claims in the instant lawsuit while the grievance procedure proceeded between the Association and Defendant Chelan County Sheriff's Office on behalf of Plaintiff.  *See* ECF Nos. 11, 13, 14.

The record further demonstrates that counsel for the Association maintained contact with Plaintiff, sought Plaintiff's feedback, and negotiated the Settlement Agreement with Plaintiff's concerns and rights in mind, despite no legal requirement to do so.  ECF No. 47-7, 47-10, and 47-11.  The Association then provided the Settlement Agreement to Plaintiff which she signed.[8]  Accordingly,

---

does not include: (1) evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term; (2) evidence that would show an intention independent of the contract; or (3) evidence that varies, contradicts or modifies the written language of the contract." *Bort v. Parker*, 110 Wash. App. 561, 574 (2002) (internal citation omitted).  Accordingly, the Court need not consider Plaintiff's unilateral and self-serving interpretation of the Settlement Agreement.

[8] The Court recognizes that Plaintiff signed a page marked "DRAFT."  However, the Court puts little weight on this concern for a few reasons.  First, Plaintiff was not required to sign off on the Settlement Agreement between the Association and the former employer as the Association has full authority to act on her behalf throughout the grievance procedure, including entering into a settlement

ORDER - 14

Plaintiff cannot plausibly contend that the Association failed to inform her about the grievance procedure or the settlement negotiations. All of this strongly demonstrates that the Association was discharging its obligations under the CBA diligently.

Lastly, Plaintiff suggests the Defendant's "may have colluded" but provides no basis for this assertion. ECF No. 41, p. 20. If Plaintiff believes that the Association breached its duty by improperly colluding with Defendant Chelan County Sheriff's Office, redress must be sought against the Association. *Vaca*, 386 U.S. at 186. The Court can divine no evidence of improper collusion on this record.

## IV.  CONCLUSION

Based on the foregoing, for the reasons stated in this Report and Recommendation, Plaintiff is bound by all parts of the Settlement Agreement and the terms should be enforced regardless of whether the terms impact potential damages in the instant lawsuit. In sum, the CBA required that wrongfully terminated employees grieve their complaints through the Association. ECF No. 47-1. The Association then grieved Plaintiff's suspension and wrongful termination, resulting in the Settlement Agreement. ECF No. 40-1. Though not legally required, the Association then sought Plaintiff's feedback and incorporated her concerns into the final version of the Settlement Agreement. ECF Nos. 47-7, 47-10, and 47-11. Plaintiff then signed the agreement after discussing the legal agreement. *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989). Second, emails and texts sent contemporaneously demonstrate that Plaintiff knowingly signed the document intending it to be final as represented by the Association's counsel. ECF No. 40-1. Third, Plaintiff has willingly accepted the fruits of the Settlement Agreement since its execution in 2021.

ramifications with the Association's attorney. ECF Nos. 40-1, 47-10, and 47-11. Plaintiff has thereafter accepted considerable financial and other benefits from the Settlement Agreement.

Accordingly, the Settlement Agreement represents the end of a grievance procedure engaged in on Plaintiff's behalf between the Association and Defendant Chelan County Sheriff's Office. Like the rest of the Settlement Agreement, the waiver regarding future wage claims applies to Plaintiff and as a result, damages in this lawsuit are impacted and limited by the waiver. Therefore, Plaintiff may not seek or collect any wage claims arising from her employment with the Chelan County Sheriff's Office in this litigation. Ultimately, Plaintiff seeks to have her cake and eat it too. Plaintiff asks that on one hand, the Court declare the parts of the Settlement Agreement that restrict her collection of certain future damages void, but on the other hand that the Court still require Defendant Chelan County Sheriff's Office to provide Plaintiff financial and other benefits under the same Settlement Agreement. Plaintiff's position is untenable on the record before the Court.

## V.    RECOMMENDATION

For the reasons stated above, the Court recommends that the District Court grant Defendant's Motion to Enforce Settlement Agreement. ECF No. 38. Though the Court finds little legal basis for Plaintiff's objection to enforcement of the Settlement Agreement, due to the fact that this is Defendant's Motion, and Plaintiff had not yet sought wage claims, the Court finds that Plaintiff's response was in good faith and recommends that no attorney fees or costs need be assessed.

## VI.    OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and

ORDER - 16

serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within fourteen (14) days after receipt of the objection. Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to counsel.

DATED February 21, 2024.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 17